The next item on our calendar is United States v. Jacques Durand. Good morning, Your Honors, may it please the Court, my name is Allegra Glashauser, I represent Appellant Jacques Durand. Your Honors, when questioning Mr. Durand, the Postal Inspectors had with them a file with a handful of phone numbers that they knew could crack open their case. They asked Mr. Durand about his number, didn't believe his answer, confronted him, and asked again. They didn't fill out any booking paperwork, and they didn't book Mr. Durand. There's no phone number exception to Miranda. This was simply interrogation after Mr. Durand had invoked his right to counsel. Isn't what they were asking for, though, basic pedigree information, and isn't the reason he ultimately gave his cell phone number over because the original number he gave turned out to be a not working number? So it's not basic pedigree information, Your Honor, for three reasons. First, the inspectors here had reason to know that his phone number could be incriminating. So for the booking or pedigree exception to apply, the government has to show that that's not true, that the agents didn't have reason to think the answer could be incriminating. Here they knew it could be. In fact, they had the file with those five to seven phone numbers with them in the interrogation room, and they testified that they knew that the number could be important to investigate the crime. So that makes this different than other circumstances where a phone number might not be potentially incriminating. So your argument is they should not have asked, once he gave them a phony phone number, they shouldn't have asked further about the phone on his person? That's correct, Your Honor. I think it's a little bit further that they shouldn't have asked the question in the first place because the government hasn't shown they were conducting any sort of booking process. But they certainly shouldn't have confronted him, accused him of lying, and then asked again. That's the hallmark of a course of interrogation, when you confront somebody and continue to ask. On whether it was a booking, I mean, there's no law that says when a booking needs to take place or when a form needs to be filled out, right? That's true. They were asking questions in the order of the U.S. Marshal's form, right? They corresponded to those questions. They weren't, Your Honor. Some of them were the same. Some of them were different. But what's important here is that they were not booking or processing Mr. Durand. It's not about timing. But when you look at all of the cases where the booking exception applies, the hallmark of these cases is that paperwork is being filled out. That's how the court knows this is a regular administrative procedure and not an interrogation. Didn't the postal inspectors fill out paperwork? No, Your Honor. The government submitted a blank booking form into evidence at the hearing. They didn't fill out the paperwork until three months later when they had to… But, Counsel, they filled out paperwork. They just didn't fill out the booking form that you're talking about. They did not fill out paperwork, Your Honor, except for the Miranda form, which noted that he requested counsel. That is the only piece of paperwork that they filled out in connection with this interview. They didn't fill out any sort of booking paperwork until three months later. Well, yeah. I mean, even… And it does seem like they might have departed, like certainly checking the phone number might be a departure. But we'll ask the government about that. But I guess my question is this. So even if the booking exception doesn't apply, is there any argument that the number wouldn't have been discovered anyway because they were going to obtain and they did obtain a search warrant for the phone? Well, definitely, Your Honor. There's no… It's pure speculation. They would have discovered the number anyway. The phone number cracked the case open. That's the phrase the prosecutor used repeatedly at trial. As the inspectors noted, it led them to the rest of the case. But the phone was there on his… the phone was there on his person, right? Correct, Your Honor. But the inspectors did not seize the phone. They actually gave it to the local authorities. So the government hasn't even shown how or why the inspectors got the phone back in the course of events that occurred here. And they definitely haven't shown that the inspectors would have gotten the phone back if Mr. Durand hadn't given… Wait a minute. The phone was taken by the authorities. I mean, is there an argument that no one was ever going to search the phone and find out the phone number? Certainly, Your Honor. The government has not shown… How would that have happened? Because the phone number was the key piece of evidence connecting Mr. Durand to the crime, there's no indication they would have continued to investigate Mr. Durand without that piece of information. But wouldn't they turn over the phone? Weren't they going to turn over the phone to Nassau County when they turned him over for booking? Correct. And wouldn't Nassau County have access to the phone thereafter? And wouldn't they have searched the phone? Well, we know that they didn't. So, you know, what they might have done in a different scenario where they had even less information connecting him to a crime related to the phone seems to be even a further hypothetical situation, more speculation. Nassau County did not seek a search warrant for the phone. The search warrant was sought by the federal inspectors many months later as they were further investigating the case. And that warrant makes clear that the only connection between the phone and the crime is Mr. Durand's statement that that number was his. The warrant also says that there's probable cause because that's the phone that was on his person at the time of his arrest. But the connection between Mr. Durand and the crime was the phone number. This was a crime that was committed by calling into Nassau County. I mean, do you suppose there was probable cause for the arrest? No, Your Honor. There's probable cause for the arrest. And so there's probable cause for him to be a suspect. And it's a phone related crime. And there's a telephone on his person. Why is it speculative as to whether they would have searched the phone once he came in? Well, they actually didn't search the phone for many months. So I think that it is speculative to suggest that they would have searched it absent this key piece of evidence. Probable cause to arrest a person is not the same as probable cause to seek a search warrant for a phone. To seek the search warrant for the phone, they need to show that there was a crime connected to that particular phone. Absent Mr. Durand's statement about the phone number, there's no reason to think there was probable cause for the phone. His arrest here by local authorities was about, my understanding, was about different local crimes relating to perhaps mail theft that did not relate to the search of a phone. For inevitable discovery, the government has to prove each step of the path that would have led to them finding the phone number. The government abandoned this search warrant. Wasn't there evidence that he was using credit cards linked to fraudulent accounts? He was seen looking at mailboxes. And then this was the phone on his person? Not quite, Your Honor. And the government hasn't developed that record. There were surveillance photos from ATM machines that the trial court later said did not clearly show who was pictured. The government didn't introduce any of that evidence at the hearing in any attempt to show inevitable discovery. Surveillance videos were a basis for the warrant, weren't they? They were mentioned in the warrant, but the only reason that the government believed that Mr. Durand was the person in those photos is the phone. The phone number cracked the case. The entire case was about the phone number. That was true at the trial. Even though they believed, I understand that you're saying maybe the videos are ambiguous, but they seemed to have believed at the time that they had videos of him using credit cards linked to these fraudulent accounts, and they had a letter carrier who had seen him taking mail out of mailboxes, and they arrested him with a phone on his person, they would not have searched the phone because unless they knew the number, they wouldn't have thought that there was any reason to do that. Well, Your Honor, overstates the evidence. It's not like the letter carrier knew Mr. Durand and said, I saw Mr. Durand steal mail, or anybody else identified Mr. Durand as going to ATM machines. The reason that the government was able to identify Mr. Durand was because of the phone number linking him to the account. They had already identified him as a probable driver of the Nissan Maxima, right? That's why he was arrested. My understanding is they went to arrest the person driving the Nissan Maxima and then found out that it was Mr. Durand. The connection was to the car. It's only later that they focused their investigation on Mr. Durand because of the phone number. There's no factual dispute about that, Your Honor. The phone number is what the government relied on as the key fact of their case, and there's a reason I think the government didn't pursue inevitable discovery at the hearing when they had the opportunity to do so. They simply did not have the facts to present to show that they would have inevitably discovered the phone number. It was his statement that cracked open the case. But isn't his statement the product of the fact that he basically lied in the first instance about giving normal pedigree information? And that's what caused them to ask the follow-up question. The incriminating information here was the truth, not the lie. So there are some cases where when the officers are surprised by a false answer that turns out to be incriminating, then they're not faulted for that false answer. Here, the incriminating information was the truth, and the inspectors knew that the truthful phone number could be incriminating. So it's not like cases where a false answer causes surprise. No, but the false answer is what caused them to ask the next question, saying, that phone number you told us is no good. What's your real phone number? And he then gave them this phone number. Right, and they knew that asking that question was interrogation. It's not a situation where his false answer changed a booking interview into some sort of interrogation. There was no booking interview. You made that point earlier, and you keep on saying that, but you're attaching a level of formality to the whole booking process. Can't multiple law enforcement agencies work together, and doesn't that happen all the time? Sure, but the government needs to point to facts in the individual case that shows that booking and administrative processing was happening. Miranda applies to all questioning that is likely to elicit an incriminating response. Here, Mr. Durand asked for a lawyer. Afterward, he was asked questions likely to elicit an incriminating response, and the government hasn't pointed to any facts indicating that there was a booking. I would have thought you would have said that even if there was a booking, it was not a routine booking questions when they called the number and then came in and said, give me the number for that phone right there, which seems a little ridiculous to say that you're doing it so that you have accurate contact information if, in fact, the officers plan to seize the phone immediately after asking him the question. But actually, now it sounds like your position is they weren't necessarily going to seize the phone. They gave it back to him, didn't they? So that maybe it is plausible that they were saying, give me the number for that phone because that was one that they'd be able to reach him at. I thought the record reflects it was given back to him. Was it not? It was not given back to him, Your Honor. And Judge, these are not inconsistent positions. I agree completely with Your Honor that even if you were to find it was otherwise a booking proceeding, that when they confront him about lying and continue to question him about the phone number, knowing that can be incriminating, that that still is a Miranda violation. So when they come in and they say, that phone number is not an accurate number, tell me the number for that phone, if, in fact, they plan to seize it anyway, that seems to suggest they're not really looking for accurate contact information for him. But you're saying that they weren't necessarily going to seize it. You think that absent that statement, they would have just given it back to him and he would have gone on his way, right? So maybe they did at that moment expect him to have the phone. Is that not consistent with your argument? No, Your Honor. That's not my argument. I agree with Your Honor precisely that with the fact that they, knowing they weren't going to give him back his phone, they did not need his number for an administrative concern. But what they did with the phone was give it to somebody else, to the Nassau County local police officers who did not search the phone. So when we're talking about what would the inspectors have done in terms of a search warrant absent the statement. So then you're arguing both. You're arguing both that they knew it wasn't going to be given back to him. But also it wasn't necessarily going to be searched. Correct. Because they weren't doing the processing. So they were just turning it over to the local officials who were going to be processing him and for them to decide what to do with relation to their own local case and the phone. Counsel, do I understand your argument that the postal inspectors violated Miranda when they said that number you gave us doesn't work. Tell us the number on that phone. And that's after he asked for a lawyer. And at that moment, they violated Miranda because it was investigative. Correct, Your Honor. Okay, I think we have a good long expiry to time. But the argument was very good. And you have two minutes for rebuttal. We'll hear from the government. Good morning, Your Honors. Can everyone hear me? Yes, we can. Good morning, Your Honors, and may it please the court. My name is Andrew Grubin, and I represent the United States in this appeal. Inspector McKechnie's request for the defendant's telephone number was a routine pedigree question that served non-investigative purposes, including contacting the defendant later, locating him if he fled, and establishing identity. But they had the phone. They had the phone. How could they use it to contact him later? They had the phone. There are a couple answers to that, Your Honor. Just one will do. Just give me one good answer. One is there's a difference, and the defendant conflates the two, between a phone number and a device. And this is important both for the pedigree questioning portion and also inevitable discovery. There is a difference between the two, as we all know from common experience and what was elicited at the hearing, I believe at A00072, about portability, is that a device and a phone number are separate. So that's number one. What does that mean? Even if they had the phone, they could still reach him at the number? Is that the idea? You could put it on a different phone? Is that what you're saying? It could. That's one possibility. It's not the question here. Come on. When the inspectors come back in and they say, give me the number for that phone and point to the phone that's with him, they're not saying, give me the number for that phone on the assumption that it will also ring on other devices you have at home, are they? No, not at that point, Your Honor. And I'm happy to get more into that. But there's also several other reasons. One is cons finding someone if they flee. Even if that phone, let's say that number, that phone disappeared at that time, were totally abandoned by the defendant, never to be used again, as was elicited at the evidentiary hearing and discussed, as Inspector McKechnie explained, there are a whole bunch of ways that is helpful in finding someone, in finding contacts, last known addresses. You could do subpoena work. There's a lot that can be learned from the last time that phone number was used, much more in today's world than when we ask for someone's address. But wouldn't it be more convenient if you're actually doing a bona fide booking to ask for a number that would ring and he would pick it up? I understand it might be useful to get a number that he no longer has, but wouldn't it be more useful if really your purpose was to put down a phone number where you could dial that number and reach him directly to get a phone that was going to be in his possession? Sure. And when they first asked the question, it was, what's your phone number? And remember, even it's taking a step further back. Right, and then they go and they check the phone number, right? I mean, is that something they do with every phone number? Whenever they do a booking and they fill out the US Marshal's form, do they call numbers? No, Your Honor, not every booking. But what they do in every booking is try and verify information. And when you have an individual who has given five or six false answers to your questions, and remember, they didn't start the verification at the phone number. When he couldn't give a Social Security number, they have the clear report, right? And they say, well, is this your Social Security number? When he gives an address that doesn't match the license, they say, well, why is that? They don't just leave it there. And so by the time we get to the phone number, they had ample cause to be testing his answers. That's right. That seems investigative to me. That's what opposing counsel was arguing, that at some point this booking procedure turned into investigation. Respectfully, no, Your Honor, I would suggest that there is a fundamental difference between, as what the defendant likes to keep saying, confrontation. Let's use that phrase. Confrontation over a piece of pedigree information, like a Social Security number, like an employer's name, versus custodial interrogation about substantive offenses. And I think that's what this court said in Carmona, right? When, which also filed invocation, I'm fairly certain, or Gottschalk, which also filed invocation, although that might have been right to silence. But filing where it's over a piece of pedigree information and there's verification and it is, as this court has said, the duty of the officer to inquire and to push. Otherwise, the pedigree... But there's also an exception when it's going to be incriminating. So they had a list of phone numbers that would have been incriminating. And the postal inspectors even testified that they weren't going to let him leave with the phone because it was going to be a key piece of evidence. So then shouldn't they have known that asking him for a phone number and specifically asking him for the phone number of the cell phone that's on his person that they were going to search, that that would be incriminating information? Sure, Your Honor. So, yes, there are three... This court laid out three prongs. And the third prong is, was it designed to elicit an incriminating response? Sort of the exception to the pedigree exception. And the question here is, you know, was it reasonable for them to have known? And especially when they asked for that number of that phone. And the answer is no. But they knew that phone numbers were a part of the case against him. They knew that. They had those phone numbers with them, didn't they? Well, I'll address that, Your Honor's question, and then I'll go back to the other question. They didn't have a list of numbers. The defendant keeps saying that they had a case file. And in that case file, they have a whole bunch of phone numbers along with a whole bunch of other evidence. And it is very common to have... I just wanted to make that just from a factual... You know, just make that point clear. Sorry, I didn't mean to... But I just wanted to... They didn't have a list of numbers in front of them, but they obviously knew that the phone was going to be important because they testified that they were going to seize the phone from him. Right? So I understand that maybe in some case, just because there's something in a case file, it doesn't mean it would necessarily be top of mind. But here, we know that they knew how key the phone was going to be. So again, I just want to stress this point. There's a difference between, Your Honor, the phone, the device that he had and a number. When they asked, what is the number of that device, that phone, they had no... For all they could have known, an important number, and they really weren't thinking, they testified and the district court credited their testimony, that this was not top of their mind. They were really just trying to get a phone number. But when they asked for the number of that device, for all they know, the numbers that were opening the fraudulent accounts could have been a house phone number. They didn't know that that device was important in relation to one of the five to six numbers they had. But they knew that phone numbers were a component of the case against this defendant at that early time. They knew that phone numbers were an important part of the case. Did they not? They have the case file as you report. Absolutely, Your Honor, that they knew phone numbers, as were dates of birth, as was surveillance tapes, asking for tattoos. These weren't important evidentiary value. So what would have been prudent was not to pursue the phone number, because that's where they crossed the line, from just booking information to investigative questions. Well, Your Honor, I guess first I would... I don't think they went to investigative questions. Again, I think what we saw from Carmona, what we see from USB Hill, what we see from Rosa, is that there isn't verification over a piece of pedigree information isn't investigated, even if... I think we have that argument. Maybe before your time is up, you could address inevitable discovery. So opposing... So the defense counsel says that the phone number was the key piece of information, and otherwise the phone would not have been searched, and it would not have been discovered. So what do you have to say about that? Sure, Your Honor, that's... This phone number, as the district court found, with a high level of confidence, that it was more likely than not that the number would have been inevitably discovered. And there are two prongs to the inevitability discovery test, as this court laid out in Eng. One, you know, did this start the investigation? No, that part's easy. This was not the... This is not what started the investigation. The second question is... And to identify that. The second question is, what if the agent is proving that each contingency would happen? Here, this case is simpler than most. We have two contingencies. One, agents would have gotten a warrant. Two, a judge would have granted the warrant. The first one is a fairly easy question. Yes, they would have gotten a warrant. In fact, they did, and this court question... As counsel reported, they didn't search the phone for three months. So I think it's common in these cases and how just from sort of daily law enforcement practice that when they seized the phone, they decided... Or another way to look at it is if you look at the affidavit, the information that's in the affidavit is the same information that existed on the day they took the phone. There's no... They didn't develop additional evidence that makes its way into the affidavit, as far as I... And the affidavit is part of the record. And there's... The defendant mentioned we didn't get into inevitable discovery here at the hearing. That's just incorrect. There was... We elicited plenty on that. And in fact, the affidavit is in evidence for that very reason. And so the first question of would they have gotten a warrant, they did. And by the way, it was in Nassau County's possession when they... Even when the USPIS got the warrant, because it's important to recognize USPIS was the lead agency. There's an investigation, they're the lead agency, and you have different prosecuting partners that they could go to for things like search warrants. And at this point, I think the original thought was here was Nassau County was going to get it from the DA's office. They're going to get it from the DA's office. Ended up the US Attorney's office ended up getting it first. And I see that my time is... No, you can answer... Are you satisfied that you answered Judge Manasseh's question? No, because I just wanted to... If it's all right with the court... You can continue. Sorry, I just wanted to... Because there is the second prong. The second prong is that... And they said they would have gotten a search warrant, and subjective intent is important on this question, as A lays out. But number two is that they would have been granted the warrant by the judge. And here, I'll just say that I think the record is clear that if you look at that affidavit, a person who was calling up fraudulent bank accounts with a... Or setting up fraudulent bank accounts with a phone, a person who's on video, the guy with the lanyard, who's in video with the lanyard, matches the description of all the witnesses, is driving a car with a license plate that has been identified by witnesses, you have overwhelming probable cause when that guy is arrested with a phone to search that device in an identity theft case. I think it would have been malpractice for agents not to have sought a warrant. And I think, of course, at the very least, they would have been able to search it for basic information, like a phone number. Thank you, counsel. If there are no further questions, we'll turn back to counsel for Mr. Durand, Ms. Glaskowska. Oh, you're... You have to turn on your... We can't hear you. Good. Can you hear me now? Okay. Thank you, Your Honor. I'd like to turn to the government's response to the inevitable discovery argument. Because the government did not brief this below and did not explore the facts below, what the government is saying is not supported by the record. The government says that they were working in partnership with the local agency and that the government thinks that... Did Mr. McKechnie testify that he was going to give the phone to the Nassau County Police for the purpose of having it searched? And if they didn't, he was going to have it searched? He says that he thought that Nassau County might search the phone. He also doesn't remember what he said to Nassau County at all. He doesn't recall the conversation. He had to testify about what he would do in a typical case. And there's just no evidence that he was working in some sort of close partnership with Nassau County. And there's definitely no evidence that Nassau County would have searched the phone absent this statement because he just didn't... The testimony says that I was going to let them search the phone, and if they didn't, I was going to do it. He doesn't need to be working in close partnership with them. All he has to know is whether they end up doing it, and maybe that's why it took a couple months. I don't know if that's a normal time or not, but regardless, he did do it. He did because he had this number. And I think the crux of this is... Can you address... You just said, again, he had the number, but can you address the point that the government made that the information that was contained in the application for the warrant really did not change from what would have been included in the application if it had been made closer to the time of the questioning? Well, so the government hasn't introduced into evidence what other investigative facts they had at the time of questioning as opposed to at the time of the warrant, so I don't know if that's true. I do not know which ATM surveillance photos they had at the time of the questioning and whether or not they provided a clear picture. I know that at trial, the judge said that the ATM surveillance pictures did not show a clear picture of Mr. Durand, which is one of many reasons why the phone number was the piece of evidence that cracked open the case. So that's speculation. The government is saying it now. We don't know if it's true. We don't know what the agents would have done if they didn't have this key piece of information. What we do know is that the judge who granted the warrant with the phone number there, which connected the phone to all of this other information, the judge still severely limited what information the government was able to get. So the judge did a very careful review, crossed out many of the things the government asked for in relation to the phone, and limited their search warrant even with the statement from Mr. Durand that his phone number was the number that had called numerous different banks. So it is speculation to think that they would have sought the search warrant and that they would have gotten it without that key piece of information. There are no further questions. Your time has expired. Thank you, counsel. Thank you both very much for good argument. We will turn to the last case.